# Lamb *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Master and servant—Railroad company—Safe place in which to work—Assumption of risk—Case for jury.*

Where in an action against a railroad company to recover for personal injuries sustained by an employee standing on a ladder on the side of a moving freight car, in the discharge of his duties, being caught between such car and a car on the next track, it appeared that there was not sufficient clearance between the two tracks to afford a safe place for plaintiff to work; that the plaintiff did not know that the clearance between the tracks was less than the standard clearance and was insufficient, but had walked between cars standing on such tracks hundreds of times before in safety, the clearance ordinarily being eighteen inches; and that at the time of the accident he was caught by reason of the sudden lurching of the car on the next track, the question of defendant's negligence and plaintiff's assumption of risk were for the jury, and a verdict for the plaintiff will be sustained.

Argued Oct. 3, 1917. Appeal, No. 42, Oct. T., 1917, by defendant, from judgment of C. P. Washington Co., Nov. T., 1915, No. 423, on verdict for plaintiff, in case of J. W. Lamb v. Pennsylvania Railroad Company. Before BROWN, C. J., MESTREZAT, STEWART, FRAZER and WALLING, JJ. Affirmed.

Trespass to recover damages for personal injuries.

IRWIN, J., filed the following opinion, sur defendant's motion for judgment n. o. v.:

This is admittedly a close case. Counsel for the plaintiff in his brief speaks of it as a border line case, but after mature deliberation we have come to the conclusion that it was a case for the jury and not the court to decide. The verdict of the jury establishes the following facts, which are supported by sufficient evidence: The accident occurred in the Pennsylvania Railroad yards at Youngwood, in Westmoreland County, in what was known as the loaded classification yard. In that yard there were at least nineteen tracks leading off from what is known as the ladder track. The plaintiff had worked in that yard and the other yards adjoining for fifteen years, with the exception of two years about eight or ten years before the accident when he was working on the road. He was thoroughly familiar with all the yards and with all the tracks and had worked over all the tracks handling all kinds of cars.

On the morning of the accident No. 11 track was full of loaded coal cars for more than two hundred feet at least, down from the ladder track. The conductor of the shifting crew ordered them to take a certain empty car off track No. 10 and place it on track No. 19, and in order to get that car they had to hitch on and pull these eight or ten cars off No. 10 track, go up the ladder track and then back down on track No. 19 where they left this one car. They then pulled back up on to the ladder track and backed down to No. 10 track and down No. 10 track for the purpose of coupling up with the remaining cars standing on that track.

The plaintiff was a brakeman and as the cars were being backed by the engine down No. 10 track he was standing on the ladder on the side of the car next to No. 11 track, the ladder being close to the front end of the car. He was occupying that position so as to be able to see that the car properly coupled when backed against the end of the train of cars standing on that track. The car, on the side of which he was riding, was empty. He was standing with his foot or feet on the stirrup or lower step

of the ladder and his left arm thrown over the top of the
car.   There was a flange on the top of the bed of the car,
which extended out to about even with the edge of the
posts which supported the side of the car bed.   It was
usual and customary for brakemen riding the cars in on
these tracks to ride on the ladder on the side of the car
just as the plaintiff was doing.

There were some eight or nine cars being shifted back
on to No. 10 track, the same cars that had been taken off
No. 10 in order to get the one car that was to be placed
on No. 19 track.   As the end of the car on which the plain-
tiff was standing reached a point about two hundred
feet from the ladder track down on No. 10 track the
plaintiff was caught between the side of the car on which
he was riding and the side of a loaded car on track No.
11 and was squeezed and rolled round once between the
cars and then fell to the ground between the tracks; by
reason of which the plaintiff was very seriously, and, it
was claimed, permanently injured.   The plaintiff
claimed to recover from the company on the ground that
there was not sufficient clearance between tracks Nos. 10
and 11 to afford the plaintiff a reasonably safe place in
which to work, and the plaintiff's right of recovery was
resisted on two grounds especially, first, that he had been
guilty of contributory negligence, and, second, that he
was thoroughly familiar with the location of the tracks,
had worked in the yard for almost fifteen years, and over
these tracks Nos. 10 and 11 for at least ten years, and
that he must be held to have assumed the risk.

The question of the plaintiff's contributory negligence
was clearly a question for the jury and we may dismiss
it from any further consideration and consider the ques-
tion as to whether or not the court should enter judg-
ment in favor of the defendant n. o. v. on the ground that
the plaintiff appreciated the danger and must be con-
clusively presumed to have assumed the risk.

The plaintiff testified that when he was lying down on
the ground he stretched his arms out and with his hands

could touch one rail of track No. 10 and one rail of track No. 11, and he estimated that the tracks were 6 to 6 feet 6 inches apart. The engineer called by the defendant testified that at a point three hundred feet from the ladder track the distance between track No. 10 and track No. 11 was 6 feet 7 inches, and that two hundred feet from the ladder track the distance between the two tracks was 6 feet 9 inches. The standard gauge between tracks is 7 feet to 7 feet 5 inches. Louis Johnson, a witness called by the plaintiff, testified that he had been track foreman for the defendant company at the Youngwood yards and that he had helped to lay the tracks in this yard. He said they had aimed in laying the tracks to work to a gauge of 7 feet between the tracks, but that part of the ground over which they laid the tracks was a swamp, which they had to fill in, and that in laying tracks 9, 10 and 11 they did not maintain the gauge of 7 feet, but that they were laid with a narrower space than 7 feet between them.

The car on which the accident occurred was a Wheeling & Lake Erie gondola car No. 50539. Mr. Tarbell, a mechanical engineer for that road called by the plaintiff, testified that that was one of the widest of cars and that its width over all was 10 feet 1½ inches; that on the top of the bed of the car there were flare boards which extended up and out even with the outside edge of the posts and that the posts at the side of the car were about 6 inches thick. The standard width of a track between the rails is 4 feet 8½ inches, and the average width of the ball of a rail, or that part on which the wheels run, is 2½ inches. There was a very slight bend in the tracks at or near where the accident occurred, but there was no evidence to show what effect that would have upon the space between the cars on No. 10 and No. 11 tracks. The plaintiff testified that he had walked through between the cars on tracks Nos. 10 and 11 hundreds of times and that in riding a car in on track No. 10, as he was doing on the morning of the accident, he usually had a space of about eight-

een inches between his car and the car or cars on track No. 11.    He testified further that just before he was caught between the cars on the morning of the accident, the car on which he was riding made a lurch and sagged over towards the cars on track No. 11, and that it was because of this that he was caught between the cars; that he did not know that he would have been caught had the car not made that lurch.    He testified further that he did not know what caused the car to make the lurch, and there was no evidence to show that either the car on which he was riding or track No. 10 was not in good condition.    The plaintiff claimed that he was riding the car in in the usual and ordinary way; that he had never heard of any brakeman being injured by being caught between cars at that point, and that he did not know that the place was dangerous.

Mr. Patterson, an assistant trainmaster of the Pittsburgh Division of the P. R. R. Co., with an office at Youngwood, testified that he regarded the place where the accident occurred as reasonably safe; the question and answer of Mr. Patterson being as follows: "Q. It was the aim of the company that the place where this accident occurred—it was the aim of the company at that place to provide a reasonably safe place for the brakemen to perform their duties, wasn't it?    A. Yes, and in view of the fact that they had performed the duties there for sixteen years without an accident until this accident, was considered reasonably safe."

Mr. Cox, a witness called for the defendant, who was the general yardmaster at Youngwood, testified that this was not a safe place for the plaintiff to ride on the side of the car and that the only safe place for him to ride was on the inside of the car near the brake.

It was well said by counsel that this was a border line case, because it is a question of a few inches one way or another.  If the space between these tracks had been a few inches less it would have been obvious to any one working there that it was dangerous and they would be

held to have assumed the risk, and if the space had been a few inches greater than it was the place would have been perfectly safe and no accident would have happened. But in view of all the circumstances, considering that the plaintiff had worked over those tracks and between the cars for years, that no accident had ever happened, that men in the employ of the company, who were his superiors and who had worked in the yard for years, differed in their opinions as to whether it was a safe place to work or not, and in view of the further fact that there is no evidence to show that the plaintiff actually knew that the clearance between tracks Nos. 10 and 11 was less than the standard clearance between tracks in those yards, we think the question of the plaintiff's assumption of risk was a question of fact for the jury and could not be ruled as a question of law by the court.

In Madden v. Lehigh Valley R. R. Co., 236 Pa. 104, it is said: "Before the maxim, volenti non fit injuria, can be invoked, it must be shown that the plaintiff not only knew, or had full opportunity to know the circumstances, but that he appreciated, or should have appreciated, the extent of the danger, and that he voluntarily exposed himself to it."

In Valjago v. Carnegie Steel Co., 226 Pa. 514, it is said: "In a claim for negligence by an employee against his employer the maxim 'volenti non fit injuria' cannot be invoked by the defendant unless he shows that the plaintiff not only knew the circumstances, but that he also appreciated the full extent of the danger to which he was exposed by his employment, and that he voluntarily exposed himself to it. This makes the question of the assumption of risk one of fact, unless from the nature of the case it is clear of dispute in this connection."

In Madden v. Lehigh Valley R. R. Co., 236 Pa. 104, already cited, it is further said, in the opinion of the court, that,—"Although the decedent passed the point where he was killed just before the accident and had been over it in the performance of his duties at other times, it is not

clear that he was in a position to see and appreciate the danger presented. Particularly is this so when we consider the testimony of the defendant's witness Kane,—its supervisor of tracks who had charge of the deposit of ashes in question,—to the effect that so far as he could see they presented no danger. This apparently was an instance where the risk was difficult to estimate, and under such circumstances the case was for the jury. 'Where there is any doubt whether the employed was acquainted or should have been acquainted with the risk, the determination of the question is necessarily for the jury': Rummell v. Dilworth, 111 Pa. 343, 351."

In Stewart v. Central R. R. of N. J., 235 Pa. 311, it is said: "While an employee is deemed to assume the risks ordinarily and reasonably connected with his employment, and is presumed to have notice of those which are obvious, the employer is fixed with the duty to maintain instruments, appliances and conditions which do not expose his employee to dangers not ordinarily or reasonably incident to the employment; the latter has the right to presume that his employer has performed this duty, and he does not assume risks growing out of unusually dangerous conditions not to be reasonably anticipated by him.

"Where the measure of duty is a standard of ordinary and reasonable care, the degree of which varies according to the circumstances, and where the facts are disputed, or there is any reasonable doubt as to the inference to be drawn from them, the issues must be submitted to the jury."

In Vorhees v. The Lake Shore & Michigan Southern Ry. Co., 193 Pa. 115, the plaintiff was injured while in the act of getting down from the top of a car, by coming in contact with a car standing on a siding, by reason of that siding having been constructed without a sufficient clearance between it and the main track. In disposing of the question of the assumption of risk Mr. Chief Justice STERRETT said; "Whether, from his experience, or

from opportunities of examination afforded him before the time of the accident or otherwise, he knew, or ought to have known, the dangerous character of that siding, whether or not he was justified in choosing the time and manner of his descent from the top of the car, and whether or not, under the circumstances, and especially in view of the duties he was required to perform, he was guilty of any act of negligence which contributed to his injury, etc., were necessarily questions of fact for the jury, under all the evidence before them."

In Fitzgerald v. Connecticut River Paper Co., 155 Mass. 155, the syllabus correctly states the whole case as follows: "A woman, in leaving the mill in which she was employed, by means of steps covered with ice, fell and was injured. In an action against her employer to recover for such injuries, there was evidence that the ice was due to exhaust steam from an engine, run by the defendant, falling upon the steps and freezing, so as to cause varying degrees of slipperiness in different states of the weather; that the plaintiff was fifty-one years of age and had worked in the mill for thirteen years; that the steps afforded the only means of leaving the mill, and fifty women working in the same room with the plaintiff used them daily; that the plaintiff knew the steps to be icy and more or less slippery in the winter season; and that at the time of the accident she was going down the steps with a dinner pail in one hand, and holding on to the railing with the other. Held, that there was evidence tending to show that the defendant was negligent and that the plaintiff was in the exercise of due care; that whether the plaintiff assumed the risk was a question of fact for the jury; and that it could not be said as a matter of law that she appreciated the risk or that she was not acting under such an exigency as would justify her in going down by the steps, and deprive her act of that voluntary character which is referred to in the maxim, volenti non fit injuria."

In Johnston v. Oregon S. L. & U. N. Ry. Co., 31 Pac.

Rep. 283, the court said: "An open and visible risk is such as would in an instant appeal to the senses of an intelligent person: Wood on Master & Servant, 763. It is one so plain that a person familiar with the business would instantly recognize it. It is a risk about which there could be no difference of opinion in the minds of intelligent persons accustomed to the service. It is not expected that a servant will make close scrutiny into all the details of the instrumentalities with which he deals. The servant is expected to observe such objects only, in the absence of notice, as would in an instant convince him of their danger. It is not expected of a switchman that he should carefully measure the difference between a switch target and rail. This is the duty of the master and the servant has the right to assume that the track or other obstruction is at a reasonably safe distance, in the absence of anything to excite special apprehension of danger."

In Valjago v. Carnegie Steel Co., 226 Pa. 514, 519, the court said: "They urge the application of the maxim volenti non fit injuria, but before this maxim can be invoked it must be shown that the plaintiff not only knew the circumstances, but that he also appreciated the full extent of the danger to which he was exposed by his employment, and that he voluntarily exposed himself to it."

We think the authorities cited show clearly that it would have been error for the court to have taken this case from the jury and to have instructed the jury that the plaintiff must be conclusively presumed to have assumed the risk. The injury to the plaintiff by reason of his riding on the side of the car and being caught between that car and a car on track No. 11 by reason of the width of the car upon which he was riding and the lurching of the car at the time of the accident, and the further fact that the distance between the two tracks was less than the standard gauge, was not such an injury as was reasonably incident to the plaintiff's employment,

and hence it could not be said that the plaintiff had assumed the risk of that injury, unless it was first shown that he knew that those tracks were less than the standard distance apart, and that he knew and fully appreciated the danger to which he was exposed in riding in on the side of the car at the time the accident occurred. And, as we have already pointed out, there being no evidence to show that the plaintiff knew the exact distance between the two tracks, or that they had been constructed and maintained with a less distance between them than the standard gauge between tracks maintained in that yard, and in view of the further fact that he had passed over those tracks on cars and between the cars hundreds of times for many years and never had heard of an accident, the court could not hold as a matter of law that he had assumed the risk, but was bound to submit it to the jury as a question of fact. It follows, therefore, that the motion for judgment for defendant non obstante veredicto must be overruled.

Verdict for plaintiff for $7,232.50 and judgment thereon. Defendant appealed.

*Errors assigned* were rulings on evidence, answers to points, in refusing to direct a verdict for defendant and in refusing to enter judgment for defendant n. o. v.

*Rufus S. Marriner*, with him *James A. Wiley*, of *Wiley & Marriner*, for appellant.

*A. J. Eckles*, with him *Harry D. Hamilton*, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 7, 1918: We have carefully considered the testimony in this case, and the briefs of counsel and the authorities cited therein, and while, as suggested by both court and counsel, the case may be on the border line, we are not con-

vinced that the record discloses reversible error. The
clear, impartial and entirely adequate charge omitted
nothing which was necessary to enable the jury to intelli-
gently consider the testimony and determine the facts
of the case. The learned trial judge subsequently re-
viewed the facts and law in an exhaustive opinion over-
ruling the motion for judgment non obstante veredicto
for defendant and amply vindicating the judgment which
he directed to be entered on the verdict.

There was no evidence in the case which would war-
rant a finding or even an inference that the plaintiff's
injuries resulted from his own negligence. This is so
clearly correct that a discussion of the question is not
required. The serious question, and the one to which
the appellant has devoted its extended argument, is that
the plaintiff fully appreciated the danger and must be
conclusively presumed to have assumed the risk of the
service he was performing at the time he was injured.
The plaintiff was a brakeman employed by the defendant
company in its loaded classification yard at Youngwood,
Westmoreland County, Pennsylvania. He had worked
in that and the defendant's adjacent yard about thirteen
years, was familiar with the yards and the numerous
tracks and had handled all kinds of cars on them. On
the morning of the accident, the conductor of the shifting
crew ordered them to shift one of eight or ten cars on
track No. 10 to another track, and, in order to do this,
they had to pull all the cars off the track, place the one
car on the other track, and then replace the remaining
seven or nine cars on track No. 10. While backing these
cars on track No. 10, the plaintiff was standing in his
proper place on the ladder on the side of the car next to
track No. 11, the ladder being close to the front end of
the car on which he was riding. He was standing with
his feet on the ladder and his left arm thrown over the
top of the car. While in this position, he was caught
between the side of the car on which he was riding and
the side of a loaded car on track No. 11 and seriously

injured.   The plaintiff alleged that the defendant was negligent in not leaving sufficient clearance between tracks Nos. 10 and 11 to afford a safe place in which to work.   Negligence and assumption of risk by plaintiff were the grounds of defense.

We have already alluded to the fact that the evidence was insufficient to convict the plaintiff of contributory negligence.   The reasons for submitting to the jury the question of assumption of risk are so clearly stated in the opinion of the learned trial judge that we deem it unnecessary to refer to and discuss the testimony bearing on the question, as the learned trial judge does so at length in his opinion, and shows conclusively that the evidence would not support a directed verdict for the defendant on that issue.   The facts, as stated by the court, will be found in the opinion of the court below.   As a result of his reëxamination of the case on the motion for judgment, the learned court concludes as follows: "In view of all the circumstances, considering that the plaintiff had worked over those tracks and between the cars for years, that no accident had ever happened, that men in the employ of the company, who were his superiors and who had worked in the yard for years, differed in their opinions as to whether it was a safe place to work or not, and in view of the further fact that there is no evidence to show that the plaintiff actually knew that the clearance between tracks Nos. 10 and 11 was less than the standard clearance between tracks in those yards, we think the question of the plaintiff's assumption of risk was a question of fact for the jury and could not be ruled as a question of law by the court......The injury to the plaintiff by reason of his riding on the side of the car and being caught between that car and a car on track No. 11 by reason of the width of the car upon which he was riding and the lurching of the car at the time of the accident, and the further fact that the distance between the two tracks was less than the standard guage, was not such an injury as was reasonably inci-

dent to the plaintiff's employment, and hence it could
not be said that the plaintiff had assumed the risk of
that injury, unless it was first shown that he knew that
those tracks were less than the standard distance apart,
and that he knew and fully appreciated the danger to
which he was exposed in riding in on the side of the car
at the time the accident occurred......It follows, there-
fore, that the motion for judgment for defendant non
obstante veredicto must be overruled."

Judgment affirmed.